NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**GLG FARMS LLC,**
*Plaintiff-Appellant*

**v.**

**BRANDT AGRICULTURAL PRODUCTS, LTD.,**
*Defendant-Cross-Appellant*

---

2017-1937, 2017-1973

---

Appeals from the United States District Court for the District of North Dakota in No. 4:14-cv-00153-RRE-ARS, Chief Judge Ralph R. Erickson.

---

Decided: August 2, 2018

---

CHAD E. ZIEGLER, Neustel Law Offices, Ltd., Fargo, ND, argued for plaintiff-appellant. Also represented by MICHAEL S. NEUSTEL.

ANN G. SCHOEN, Frost Brown Todd LLC, Cincinnati, OH, argued for defendant-cross-appellant. Also represented by WILLIAM S. MORRISS.

---

Before O'MALLEY, MAYER, and REYNA, *Circuit Judges*.

O'MALLEY, *Circuit Judge.*

Plaintiff-appellant GLG Farms LLC appeals a district court's summary judgment ruling that defendant-cross-appellant Brandt Agricultural Products, Ltd. does not infringe GLG Farms' U.S. Patent No. 7,708,131 ("'131 patent"). *See GLG Farms LLC v. Brandt Agric. Prods. Ltd.*, No. 4:14-cv-153, 2017 WL 6210909 (D.N.D. Mar. 29, 2017). Brandt, for its part, conditionally cross-appeals on alternative noninfringement grounds, arguing that the court erred by not construing certain claim terms. We conclude that the district court's summary judgment ruling is predicated on a construction of the central claim term in dispute that is correct in relevant part. Accordingly, we *affirm* that ruling and *dismiss* Brandt's conditional cross-appeal as moot.

## I. BACKGROUND

### A. The '131 Patent and the Accused Products

GLG Farms' '131 patent is directed to a drive kit for use with a "swing auger." A swing auger is a piece of agricultural equipment used to unload grain from a truck into a silo. It generally comprises a moveable hopper, which collects the grain; a main auger, which lifts the grain up to the silo; and a swing auger connected thereto, which pivots about a near-vertical axis and transports the grain from the hopper to the main auger. According to the '131 patent, prior art augers required the operator "to manually manipulate the swing auger into the desired positions," which was difficult to do. '131 patent, col. 1, ll. 31–33.

The '131 patent purports to solve this problem by providing a remote-control drive kit comprising twin drive motor assemblies affixed to the hopper. The hopper itself has a "base wall" that interconnects two "end walls" and defines the hopper's "side edges" at right angles thereto. *Id.* col. 1, ll. 60–63. Each drive assembly is arranged for

mounting on the base wall of the hopper, adjacent to a side edge, and contains one or more wheels driven by an electric motor. *Id.* col. 1, l. 66 to col. 2, l. 7.

Claim 1 of the '131 patent is representative and recites the auger assembly described above in which the drive assemblies are "arranged for mounting on the base wall adjacent the [first/second] side edge of the hopper":

> 1. An auger assembly comprising:
>
>> a main auger;
>>
>> a swing auger connected to the main auger for pivotal swing movement about a generally upstanding axis of the main auger so that the swing auger can swing from a retracted position along side the main auger to an extended position at right angles to the main auger;
>>
>> a hopper connected to an outer end of said swing auger, the hopper having a pair of end walls and a base wall interconnecting the end walls and defining first and second side edges at right angles to the end walls;
>>
>> and a drive kit for attachment to the hopper for driving movement of the hopper comprising:
>>
>>> a first drive assembly *arranged for mounting on the base wall adjacent the first side edge of the hopper*;
>>>
>>> and a second drive assembly *arranged for mounting on the base wall adjacent the second side edge of the hopper*;

> each drive assembly including at least one ground wheel and an electric drive motor for driving said at least one ground wheel about its axis so as to drive movement of the hopper.

*Id.* at 4:22–42 (emphases added).

Brandt manufactures and sells auger equipment, including the HP and XL "Swing Away" augers, each of which is equipped with an "EZSwing" brand moving system. These products contain a main auger, a swing auger, and a hopper, and have their drive assemblies mounted to the *outside* of the hopper's end walls. *See, e.g.*, J.A. 2002–05.

## B.  Procedural History

In December 2014, GLG Farms filed suit against Brandt in the U.S. District Court for the District of North Dakota, alleging that Brandt's augers infringe the '131 patent. In its *Markman* order, the court construed the claim term "arranged for mounting on the base wall adjacent the [first/second] side edge of the hopper" to mean "arranged for mounting on the base wall *on the [first/second] side edge* of the hopper *between the end walls*." *See* J.A. 590–93 (emphases added). In other words, the court read the claims to require that the drive assemblies be mounted "on" the side edges of the base wall and "between" the end walls.

Both parties moved for summary judgment on the issue of infringement. The district court granted judgment in favor of Brandt, finding that the accused products do not infringe, literally or under the doctrine of equivalents, in view of the court's construction. *GLG Farms*, 2017 WL 6210909, at *3–6. In particular, the court found that the accused products, which have their drive assem-

blies mounted *outside* the end walls, do not meet the "arranged" claim limitation. *Id.*

GLG Farms appealed, and Brandt conditionally cross-appealed.[1]     We have jurisdiction under 28 U.S.C. § 1295(a)(1).

## II. DISCUSSION

GLG Farms argues that the district court's noninfringement determination is predicated on an incorrect construction of the "arranged" claim term, and that, under the proper construction, summary judgment of noninfringement should have been denied.  We address these arguments below.

### A. The District Court Correctly Construed the Claims to Require that the Drive Assemblies Be Mounted Between the End Walls

"We review a district court's ultimate claim constructions *de novo* and any underlying factual determinations involving extrinsic evidence for clear error." *David Netzer Consulting Eng'r LLC v. Shell Oil Co.*, 824 F.3d 989, 993 (Fed. Cir. 2016) (citing *Teva Pharm. USA, Inc. v. Sandoz, Inc.*, 135 S. Ct. 831, 841–42 (2015)).

---

[1]     On April 4, 2018, we heard oral argument, which was interrupted by external noise audible through the courtroom's speakers.  Two days later, we issued an opinion summarily affirming the district court's decision under Federal Circuit Rule 36. *See GLG Farms LLC v. Brandt Agric. Prods., Ltd.*, 718 F. App'x 975 (Fed. Cir. 2018) (per curiam).  GLG Farms thereafter filed a petition for panel rehearing, arguing that the noise during oral argument disrupted its presentation. *See* Dkt. 48.  We granted GLG's petition, vacated our summary affirmance, and reheard oral argument on July 12, 2018. *See* Dkts. 51, 54.

Here, the district court construed the claim term "arranged for mounting on the base wall adjacent the [first/second] side edge of the hopper" to mean "arranged for mounting on the base wall on the [first/second] side edge of the hopper between the end walls." J.A. 590–93. The court thus imposed a requirement that the drive assemblies be located *on* the side edges, as opposed to merely adjacent thereto, and *between* the end walls, as opposed to outside thereof.

As an initial matter, we note that the parties agree that the district court erred by replacing the phrase "*adjacent* the [first/second] side edge" with the phrase "*on* the [first/second] side edge." According to the parties, the word "adjacent" encompasses both "on" and "near" in this particular context. *See* Oral Arg. at 36:16–38:10, *GLG Farms LLC v. Brandt Agric. Prods., Ltd.* (No. 2017-1937), http://oralarguments.cafc.uscourts.gov/default.aspx?fl= 2017-1937_7122018.mp3.

We nevertheless agree with the court's construction insofar as it requires the drive assemblies to be mounted *between* the end walls. The '131 patent discloses a single embodiment which the patent consistently describes as having its drive assemblies and wheels located on the base wall between the end walls. *See, e.g.*, '131 patent, Abstract ("Each drive assembly is mounted approximately midway across the base wall . . . ."), fig.2 (depicting drive wheels mounted between the end walls), col. 3, ll. 61–65 (stating that the wheels can be moved "along the inclined wall" of the base wall). These disclosures stand in stark contrast to the patent's depiction of the prior art, which shows that the only wheels on the hopper are mounted to the *outside* of the end walls. *See id.* fig.1, col. 2, ll. 36–37; *see also id.* col. 3, ll. 18–20 ("In the prior art, a pair of front wheels 54 and a pair of rear wheels 56 are rotatably attached to end walls 70 and 72 of the hopper . . . ."). This contrast suggests that the claimed invention differs from

the prior art at least because its drive assemblies are located between the end walls.[2]

While we have "expressly rejected the contention that, if a patent describes only a single embodiment, the claims of the patent must be construed as being limited to that embodiment," *Liebel-Flarsheim Co. v. Medrad, Inc.*, 358 F.3d 898, 906 (Fed. Cir. 2004), we have also held that, "[w]hen a patent . . . describes the features of the 'present invention' as a whole, this description limits the scope of the invention," *Regents of the Univ. of Minn. v. AGA Med. Corp.*, 717 F.3d 929, 936 (Fed. Cir. 2013) (quoting *Verizon Servs. Corp. v. Vonage Holdings Corp.*, 503 F.3d 1295, 1308 (Fed. Cir. 2007)). This is precisely what the '131 patent does here. In particular, the specification states that "[t]he arrangement *of the present invention* is shown in Figs. 2, 3 and 4," and that, "[i]n *this* arrangement at a position *between* the end walls there is provided a hopper drive assembly for moving the hopper in a direction parallel to the end walls and the wheels thereon." '131 patent, col. 3, ll. 25–38 (emphases added); *see also id.* col. 2, ll. 38–40 (stating that Figure 2 shows a swing auger with "two drive assemblies of *the present invention*" (emphasis added)). The '131 patent therefore disclaims an embodiment in which the drive assemblies are *not* mounted between the end walls.

GLG Farms asserts that the '131 patent's depiction of the drive assemblies between the end walls pertains only

---

[2]    Additionally, the '131 patent specification cites to a prior art patent, U.S. Patent No. 7,191,889 ("Heley"), *see* '131 patent, col. 1, ll. 33–35, which itself shows the drive assemblies mounted on the outside of the end walls, *see* Heley, fig.8. By citing to Heley, the applicant presumably knew about Heley's drive-assembly configuration. And yet, the applicant chose to depict a different configuration as embodying the claimed invention.

to embodiments in which there are no undriven support wheels. According to GLG Farms, the '131 patent leaves open the possibility that, when there are such wheels, the drive assemblies can be mounted on the outside of the end walls to provide greater stability. But, other than pointing to a passage in the '131 patent stating that undriven wheels can be added to the end walls, *see* '131 patent, col. 3, ll. 38–39, GLG Farms does not direct us to any intrinsic support for its argument, and we find none. In fact, the passage to which GLG Farms points supports our reading. By stating that undriven wheels can be added "on the end walls," but providing no analogous statement for the *driven* wheels, the '131 patent suggests that the drive assemblies *cannot* be mounted on the end walls, and must instead be mounted between those walls.

While there is some language in the specification that refers to a preferred embodiment, *see, e.g.*, *id.* at col. 2, ll. 24–30, 34–35, when read in its entirety, the specification leads us to the conclusion we reach here. We therefore affirm the district court's construction of the claims requiring the drive assemblies to be mounted between the end walls.

### B. The District Court Properly Granted Summary Judgement of Noninfringement

"We review a grant of summary judgment under the law of the regional circuit." *Travel Sentry, Inc. v. Tropp*, 877 F.3d 1370, 1376 (Fed. Cir. 2017) (internal quotation marks omitted). The Eighth Circuit reviews a grant of summary judgment *de novo*. *Wilson v. Spain*, 209 F.3d 713, 716 (8th Cir. 2000).

We agree with the district court that the accused products do not literally infringe the '131 patent under the correct construction of the "arranged" claim term. As described above, the '131 patent claims require that the drive assemblies be mounted between the end walls. The accused products, by contrast, have drive assemblies that

are mounted *outside* the end walls. The products therefore do not literally infringe.

We also agree with the district court that the accused products do not infringe under the doctrine of equivalents. "While infringement under the doctrine of equivalents is a question of fact, '[w]here the evidence is such that no reasonable jury could determine two elements to be equivalent, district courts are obliged to grant partial or complete summary judgment.'" *Advanced Steel Recovery, LLC v. X-Body Equip., Inc.*, 808 F.3d 1313, 1319 (Fed. Cir. 2015) (quoting *Warner-Jenkinson Co. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 39 n.8 (1997)). Critically, "the range of equivalents cannot be divorced from the scope of the claims." *Vehicular Techs. Corp. v. Titan Wheel Int'l, Inc.*, 212 F.3d 1377, 1382 (Fed. Cir. 2000) (per curiam). Indeed, "by defining the claim in a way that clearly exclude[s] certain subject matter," a patent may "implicitly disclaim[] the subject matter that was excluded and thereby bar[] the patentee from asserting infringement under the doctrine of equivalents." *SciMed Life Sys., Inc. v. Advanced Cardiovascular Sys., Inc.*, 242 F.3d 1337, 1346 (Fed. Cir. 2001).

Here, as described above, the applicant disclaimed an embodiment in which the drive assemblies are mounted outside the end walls. GLG Farms may not recapture that claim scope via the doctrine of equivalents. *Id.* at 1345 ("Having specifically identified, criticized, and disclaimed the dual lumen configuration, the patentee cannot now invoke the doctrine of equivalents to embrace a structure that was specifically excluded from the claims." (internal quotation marks omitted)).

Additionally, the claims do not merit a scope of equivalence that embraces a configuration in which the drive assemblies are attached to the end walls rather than on the base wall. The plain language of the claims clearly requires that the drive assemblies be mounted "on the

*base wall*," *see* '131 patent, col. 4, ll. 35–38, and the specification is replete with examples consistent with this requirement, *see, e.g.*, *id.* Abstract, col. 1, l. 66 to col. 2, l. 2. The patent also distinguishes the location of the drive assemblies in the claimed invention from that in the prior art, where the assemblies are "attached to end walls." *Id.* col. 3, ll. 18–21. GLG Farms' broad scope of equivalence would "effectively eliminate that [claim] element in its entirety," *Warner-Jenkinson*, 520 U.S. at 29, and must therefore be rejected.

Accordingly, we affirm the Board's grant of summary judgment of noninfringement, which renders moot Brandt's conditional cross-appeal.

### III. CONCLUSION

We have considered GLG Farms' remaining arguments and find them unpersuasive. We *affirm* the district court's grant of summary judgment in favor of Brandt and *dismiss* Brandt's conditional cross-appeal as moot.

**AFFIRMED AS TO CASE NO. 17-1937, DISMISSED AS TO CASE NO. 17-1973**

### COSTS

No costs.