# United States Court of Appeals for the Federal Circuit

---

**EKO BRANDS, LLC,**
*Plaintiff-Cross-Appellant*

**v.**

**ADRIAN RIVERA MAYNEZ ENTERPRISES, INC.,
ADRIAN RIVERA,**
*Defendants-Appellants*

---

2018-2215, 2018-2254

---

Appeals from the United States District Court for the Western District of Washington in No. 2:15-cv-00522-JPD, Magistrate Judge James P. Donohue.

---

Decided: January 13, 2020

---

DAVID ALLEN LOWE, Lowe Graham Jones PLLC, Seattle, WA, argued for plaintiff-cross-appellant. Also represented by LAWRENCE D. GRAHAM.

WILLIAM A. DELGADO, Dto Law, Los Angeles, CA, argued for defendants-appellants. Also represented by ASHLEY LYNN KIRK, Willenken Wilson Loh & Delgado LLP, Los Angeles, CA.

---

Before DYK, REYNA, and HUGHES, *Circuit Judges.*

Opinion for the court filed by *Circuit Judge* DYK.

Opinion concurring-in-part and dissenting-in-part filed by *Circuit Judge* REYNA.

DYK, *Circuit Judge*:

This case involves claims of U.S. Patent No. 8,720,320 ("the '320 patent") owned by Adrian Rivera and Adrian Rivera Maynez Enterprises, Inc. (collectively, "ARM") and U.S. Patent No. 8,707,855 ("the '855 patent") owned by Eko Brands, LLC ("Eko"). The parties appeal and cross-appeal various rulings made by the United States District Court for the Western District of Washington in infringement proceedings concerning the two patents. We affirm the judgment of invalidity as to the asserted claims of the '320 patent and the award of attorney's fees. We also affirm the judgment of infringement as to the asserted claims of the '855 patent.

BACKGROUND

I. The '320 Patent

ARM owns the '320 patent, which describes an adaptor device for use with Keurig® single-brew coffee machines or similar brewers. The '320 patent describes single-brew coffee machines as generally accepting one of two cartridge formats: "pods," which are "small, flattened disk-shaped filter packages of beverage extract" and "larger cup-shaped beverage filter cartridges." '320 patent, col. 1, ll. 17–21. The patent describes the configuration used by a particular type of Keurig® coffee machines (known as K-Cup® machines) as "inherently limit[ed] [to] the use of . . . cup-shaped cartridges" and that users of K-Cup® machines "would have to purchase a different machine to brew beverage from pods." *Id.* at col. 1, ll. 39–44. The '320 patent describes an "adaptor assembly configured to effect operative compatibility between a single serve beverage brewer

[for use with cup-shaped cartridges] and beverage pods." *Id.* at col. 1, ll. 6–9; *see also Rivera v. ITC*, 857 F.3d 1315, 1316–17 (Fed. Cir. 2017) (discussing the '320 patent in detail).

On August 4, 2014, ARM filed a complaint against Eko and ten other respondents at the International Trade Commission ("ITC") alleging infringement of claims 5–8 and 18–20 of the '320 patent and seeking a limited exclusion order and cease and desist order. In proceedings involving other respondents, the ITC found that claims 5–7, 18, and 20 of the '320 patent were invalid for lack of written description, and this court affirmed. *Rivera*, 857 F.3d at 1323. However, the ITC made no invalidity determination concerning claims 8 and 19 (those claims had been withdrawn as to respondents other than Eko). Eko defaulted in the ITC proceedings with respect to ARM's allegations that it infringed claims 8 and 19, and the ITC issued a limited exclusion order and cease and desist order.

On April 2, 2015, Eko filed this action against ARM in the United States District Court for the Western District of Washington. Eko sought (1) a declaratory judgment of noninfringement as to claims 8 and 19 of the '320 patent, and (2) a declaratory judgment that claims 8 and 19 were invalid as obvious. ARM counterclaimed alleging infringement of claims 8 and 19. The district court issued a *Markman* ruling construing various claim terms. Eko filed for summary judgment of noninfringement and obviousness. The district court granted Eko declaratory judgment of noninfringement but denied Eko's motion for summary judgment as to obviousness, finding that there remained disputed issues of material fact. After a five-day jury trial, the jury found claims 8 and 19 of the '320 patent to be invalid as obvious. During these proceedings, the district court awarded Eko attorney's fees associated with obtaining a judgment of noninfringement and obviousness. ARM appeals the district court's findings of noninfringement and obviousness, as well as the district court's fee awards.

## II. The '855 Patent

Together with its declaratory judgment claims as to the '320 patent, Eko asserted an infringement claim against ARM with respect to claim 8 of the '855 patent owned by Eko, which describes a reusable filter cartridge device for use with single-serve beverage brewing machines. Unlike typical filter cartridges, which must be pierced by the beverage brewing device during operation, the device described by the '855 patent allows for the operation of the brewing machine without piercing the filter cartridge, thereby allowing the device to be reused multiple times. The district court entered an order construing claim 8 of the '855 patent, and ARM stipulated to infringement based on the district court's claim construction. At trial, the jury awarded Eko compensatory damages but found that ARM did not willfully infringe, and the district court did not award enhanced damages. ARM appeals the district court's judgment of infringement. Eko cross-appeals the jury's finding of no willful infringement and the district court's denial of enhanced damages. We have jurisdiction under 28 U.S.C. § 1295.

## DISCUSSION

We review the jury's verdict for substantial evidence, and the jury instructions de novo. *Abbott Labs. v. Syntron Bioresearch, Inc.*, 334 F.3d 1343, 1349 (Fed. Cir. 2003). We review a district court's grant of summary judgment de novo. *Synopsys, Inc. v. Mentor Graphics Corp.*, 839 F.3d 1138, 1146 (Fed. Cir. 2016). "We review the district court's ultimate construction de novo, and any underlying factual findings supporting the construction for clear error." *Ethicon Endo-Surgery, Inc. v. Covidien, Inc.*, 796 F.3d 1312, 1333 (Fed. Cir. 2015) (citing *Teva Pharm. USA, Inc. v. Sandoz, Inc.*, 574 U.S. 318, 331 (2015)). "The ultimate determination of obviousness presents a legal question subject to *de novo* review, but 'explicit and implicit' subsidiary factual determinations made by the jury—including the

scope and content of the prior art—are reviewed for substantial evidence." *Intellectual Ventures I LLC v. Motorola Mobility LLC*, 870 F.3d 1320, 1326 (Fed. Cir. 2017) (citing *Kinetic Concepts, Inc. v. Smith & Nephew, Inc.*, 688 F.3d 1342, 1360 (Fed. Cir. 2012)).  We review the district court's award of attorney's fees under 35 U.S.C. § 285 for abuse of discretion.  *Highmark Inc. v. Allcare Health Mgmt. Sys.*, 572 U.S. 559, 561 (2014).

## I. ARM's '320 Patent

### A. Claim Construction

ARM argues that the jury verdict that claims 8 and 19 of the '320 patent were invalid for obviousness should be set aside because the district court erred in its claim construction, and that under the proper construction, U.S. Patent No. 3,878,722 to Nordskog ("Nordskog") does not disclose a fully enclosed space and the obviousness verdict cannot stand.  The district court construed the term "brewing chamber" in claims 5 and 18, which claims 8 and 19 depend from, to mean "a compartment in which brewing occurs."  *Eko Brands, LLC v. Adrian Rivera Maynez Enters., Inc.*, No. 2:15-cv-00522-JPD (W.D. Wash. Feb. 24, 2016), ECF No. 42 at 10 ("*Claim Construction Order*").  The district court explained that "[w]hile the plain and ordinary meaning of the word 'chamber' certainly conveys the idea of a compartment or defined area, it does not necessarily have to be sealed or fully-enclosed."  *Id.*

ARM contends that the district court erred when it rejected ARM's proposed construction of "brewing chamber."  That construction required a "sealed or fully-enclosed" space.  ARM makes several arguments in favor of its more limited construction.

First, ARM directs us to two patents assigned to Keurig that are incorporated by reference into the '320 patent: U.S. Patent No. 5,325,765 ("the Keurig '765 patent") and

U.S. Patent No. 6,606,938 ("the Keurig '938 patent").[1] ARM argues that because these prior art references depicted enclosed brewing chambers, the term brewing chamber in the '320 patent must also be enclosed.

Unlike the claims of the '320 patent, the claims of the Keurig '765 patent specifically describe the brewing chamber as being sealed. Keurig '765 patent, col. 4, ll. 35–42 (describing the brewing chamber as being defined by two "components," wherein one "component which may be . . . closed to coact in sealing engagement with [the other component defining the brewing chamber]"). The Keurig '938 patent includes a "brewing chamber 44," but Figures 3 and 4 show that the "brewing chamber" is not a fully-enclosed space. Thus, nothing in the incorporated patents requires that the term "brewing chamber," standing alone, be fully sealed. In fact, they suggest the opposite—that the term "brewing chamber" standing alone does not require sealing.

Second, ARM argues that certain embodiments in the specification require us to apply ARM's proposed construction. ARM points to passages of the patent specification that describe specific embodiments that have fully-enclosed structures. But ARM ignores other embodiments in the specification, which clearly show that a "brewing chamber" is not fully enclosed. For example, Figure 6, "a schematic illustration of a cross-sectional view of a pod brewing chamber of one preferred embodiment of the present invention," '320 patent, col. 3, ll. 37–39, depicts a "lower opening 614," *id.* at col. 7, ll. 46–47. Accepting ARM's construction would exclude such a preferred embodiment from the scope of the claim. *SynQor, Inc. v. Artesyn Tech., Inc.*, 709 F.3d 1365, 1378–79 (Fed. Cir. 2013) ("A claim construction that 'excludes the preferred embodiment is rarely, if ever,

---

[1] ARM also directs us to U.S. Patent No. 5,840,189. Since that patent does not use the term "brewing chamber," it is irrelevant here.

correct and would require highly persuasive evidentiary support.'" (quoting *Adams Respiratory Therapeutics, Inc. v. Perrigo Co.*, 616 F.3d 1283, 1290 (Fed. Cir. 2010)).  The specification thus supports the district court's construction.

Third, ARM suggests that because the specification of the '320 patent notes that the brewing chamber must "trap" hot water, it must be a fully enclosed chamber.  As the patent makes clear, it is the "beverage packet" or "pod," not the brewing chamber, that traps hot water.  '320 patent, col. 1, ll. 14–17 ("Once the beverage packet is placed in the brewing chamber, the machine injects hot water into the packet . . . .").

The district court correctly determined that the term "brewing chamber" in the '320 patent does not require a fully-enclosed space.  *See Phillips v. AWH Corp.*, 415 F.3d 1303, 1313 (Fed. Cir. 2005).

## B. Jury Finding that Prior Art Disclosed Sealing Engagement

The jury found claims 8 and 19 to be invalid as obvious in light of Nordskog, standing alone, and in combination with U.S. Patent No. 6,079,315 to Beaulieu ("Beaulieu") or U.S Patent No. 5,840,189 to Sylvan ("Sylvan").  Independent claims 5 and 18 of the '320 patent, which claims 8 and 19 depend from, require a "cover [of the brewing chamber that] is adapted to sealingly engage with a top edge of the at least one sidewall."  '320 patent, col. 9, ll. 12–13, col. 11, ll. 4–5.  ARM argues that the jury's findings of obviousness were not supported by substantial evidence because the cited references do not disclose this claim limitation.

Claim 1 of the Beaulieu patent discloses a "chamber for a cartridge . . . including a bottom, sidewall and top sealed to the sidewall along a peripheral rim, said chamber comprising . . . a cup shaped housing having a sidewall . . . [and] a lid overlaying said housing."  Beaulieu, col. 5, ll. 24–44.    Beaulieu's    specification    also    contains    detailed

descriptions of the operation of the lid in conjunction with the cartridge holder. *Id.* at col. 4, ll. 19–59. Thus, the jury could have reasonably found that Beaulieu discloses this claim limitation when it described a cartridge holder with a cover sealingly engaged with the top of the cartridge holder sidewall. Under these circumstances, we need not address whether Sylvan discloses the same limitation. Substantial evidence supported the jury's verdict.

### C. Attorney's Fees for Noninfringement

ARM argues that the district court erred in granting Eko attorney's fees related to its noninfringement of claims 8 and 19 of the '320 patent. The district court construed the term "passageway" in these claims as (1) "a narrow space of some depth or length connecting one place to another," and (2) not "encompass[ing] a receptacle that had no bottom or that utilized a broad, thin mesh." *Claim Construction Order* at 12. The district court concluded that a fee award was appropriate because of ARM's unreasonable pursuit of its infringement claims.

ARM's sole contention here is that Eko should not have been the prevailing party on this issue because the district court's construction of the term "passageway" in claims 8 and 19 was erroneous.[2] ARM urges that requiring "a

---

2    Claim 8 recites:

[A beverage brewer, comprising:

a brewing chamber;

a container, disposed within the brewing chamber and adapted to hold brewing material while brewed by a beverage brewer, the container comprising:

   a receptacle configured to receive the brewing material; and

a cover;

wherein the receptacle includes

a base, having an interior surface and an exterior surface, wherein at least a portion of the base is disposed a predetermined distance above a bottom surface of the brewing chamber, and

at least one sidewall extending upwardly from the interior surface of the base,

wherein the receptacle has <u>at least one passageway that provides fluid flow from an interior of the receptacle to an exterior of the receptacle</u>;

wherein the cover is adapted to sealingly engage with a top edge of the at least one sidewall, the cover including an opening, and

wherein the container is adapted to accept input fluid through the opening and to provide a corresponding outflow of fluid through the <u>passageway</u>;

an inlet port, adapted to provide the input fluid to the container; and

a needle-like structure, disposed below the base;

wherein the predetermined distance is selected such that a tip of the needle-like structure does not penetrate the exterior surface of the base];

narrow space of some length connecting one place to another" (1) improperly reads limitations of "length" and "narrowness" into the claim language, (2) excludes an embodiment in the specification, and (3) is inconsistent with constructions adopted by the ITC and the United States District Court for the Central District of California, which both construed the term "passageway" to mean a "path, channel, or course by which something passes." But whether or not the first part of the district court's claim construction (requiring a "narrow space," *Claim Construction Order* at 12) was correct, we think the second part of the construction (that "passageway" does not "encompass a receptacle that [has] no bottom or utilized a broad-thin, mesh," *id.*) was correct, and that the district court properly granted summary judgment based on its construction.

ARM makes no claim that the receptacle (cup) itself constitutes a passageway. As the district court found, "[Eko]'s products utilize a broad, thin mesh or micropunched steel filter to allow the brewed beverage to exit the receptacle," and it is "patently obvious" that Eko's products could not infringe on the claims of the '320 patent because "[n]o reasonable person looking at the cut-out openings on the side of [Eko's] devices would describe them as passageways." *Eko Brands, LLC v. Adrian Rivera Maynez Enters., Inc.*, No. 2:15-cv-00522-JPD (W.D. Wash. Nov. 3, 2016), ECF No. 130 at 1–2; *Eko Brands, LLC v. Adrian Rivera Maynez Enters., Inc.*, No. 2:15-cv-00522-JPD (W.D. Wash. Feb. 24, 2016), ECF No. 42 at 4 ("*Summary Judgment Order*").

---

wherein the container is reusable.

'320 patent, col. 8, ll. 60–67, col. 9, ll. 1–23, 31–32 (emphases added).

## D. Attorney's Fees for Obviousness

ARM's final argument is that the district court erred in awarding attorney's fees to Eko as to the issue of obviousness with respect to the '320 patent. The district court awarded these fees because ARM's conduct as to the issue of obviousness was "exceptional." *See* 35 U.S.C. § 285. ARM suggests that the district court's denial of summary judgment conclusively established the reasonableness of its litigation position. *Checkpoint Systems, Inc. v. All-Tag Security, S.A.* held that "[a]bsent misrepresentation to the court, a party is entitled to rely on a court's denial of summary judgment . . . as an indication that the party's claims were objectively reasonable and suitable for resolution at trial." 858 F.3d 1371, 1376 (Fed. Cir. 2017) (second alteration in original) (quoting *Medtronic Navigation, Inc. v. BrainLAB Medizinische Computersysteme GmbH*, 603 F.3d 943, 954 (Fed. Cir. 2010)). But *Checkpoint* did not hold that the denial of summary judgment conclusively establishes objective reasonableness. Our cases require only that the district court considers the denial of summary judgment, not that the district court always gives that denial decisive weight.

Further, under *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, "[t]here is no precise rule or formula" for deciding whether a case is "exceptional." 572 U.S. 545, 554 (2014) (alteration  in original). The district court must consider the "totality of the circumstances" on a "case-by-case" basis. *Id.* An "exceptional" case is "simply one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated." *Id.*

Here, the district court carefully explained why it did not give its denial of summary judgment decisive weight. In its order awarding attorney's fees, the court noted that at the pretrial conference, ARM "offered no . . . explanation

to the [district court] for its [obviousness] position," except to assert that the ITC's limited exclusion order and cease and desist order remained valid and that ARM was not willing to "write that off," and "it was not until the trial was well underway that it became apparent that ARM was not seriously trying to defend the obviousness of the claims at issue." *Eko Brands, LLC v. Adrian Rivera Maynez Enters., Inc.*, No. 2:15-cv-00522-JPD (W.D. Wash. July 13, 2018), ECF No. 271 at 12–13 ("*Post-Trial Order*"); *see also Summary Judgment Order* at 3 (noting that denial of summary judgment was based on "[ARM's expert's] explanations for why [ARM's] invention would not have been obvious" and noting that while those explanations were "questionable," they gave rise to "clearly disputed issues of fact"). The court observed that at trial, "[i]n addition to failing [to prove] the primary indicators of [non]obviousness, ARM did not bother to try to show secondary factors of non-obviousness." *Post-Trial Order* at 14 n.5. The court concluded that "ARM's insistence on trying [the issue of obviousness] was largely a charade used for the purpose of extending the life of the earlier ITC . . . order." *Id.* at 13.

The district court properly considered its denial of summary judgment and provided a reasonable explanation for why ARM's position warranted a fee award. The district court did not abuse its discretion.

## II. Eko's '855 Patent

### A. Infringement

ARM contends that the district court erred in construing claim 8 of the '855 patent as not requiring a "single-serve beverage brewer," and that the judgment of infringement should be set aside. Claim 8 recites:

> A beverage brewing device <u>for use with a single serve beverage brewer having a brewing holster</u>, an inlet probe for dispensing water, the inlet probe moveable between a non-brewing position and a

brewing position, and an outlet probe extending upwardly into the brewing holster for outleting a brewed beverage, the beverage brewing device comprising: . . . .

'855 patent, col. 15, ll. 13–18 (emphasis added).[3]

------

[3]     The remainder of claim 8 reads:

(a) a body <u>removably receivable within a brewing holster of a single serve beverage brewer</u>, the body having at least one substantially vertical sidewall, a top opening, and a bottom surface intersecting the at least one substantially vertical sidewall, wherein the at least one substantially vertical sidewall and the bottom surface of the body define a brew chamber configured to contain a dry beverage medium;

(b) at least one outlet probe receptacle defined in the body and extending from the bottom surface of the body and into the brew chamber such that the at least one outlet probe receptacle is <u>configured to receive an outlet probe of the single serve beverage brewer when the body is received within the brewing holster</u>, wherein the at least one outlet probe receptacle is fluidly isolated from the brew chamber to prevent the outlet probe from penetrating the brew chamber, thereby preventing fluid from exiting the brew chamber through the outlet probe;

Because it sold only the brewing device and not the beverage brewer itself, ARM asserts that it did not infringe. But claim 8 on its face does not require a beverage brewer, even if the preamble is limiting. To the extent that claim 8 mentions a beverage brewer, it is only as a "reference point" to define the purpose and structure of the brewing device. *See C.R. Bard, Inc. v. M3 Sys.*, 157 F.3d 1340, 1350 (Fed. Cir. 1998). And there is nothing in the prosecution history suggesting that the beverage brewer itself is part of the claim. The district court correctly construed that claim 8 on its face does not require a beverage brewer.

## B. Jury Instruction 40

On its cross-appeal, Eko challenges the district court's jury instruction on willful infringement (Jury Instruction 40), the jury's finding of no willful infringement based

---

    (c) a lid removably securable to the body, the lid engageable with the body to selectively enclose a top opening of the body;

    (d) an inlet probe opening defined in the lid, the inlet probe opening <u>configured to receive an inlet probe of the single serve beverage brewer in a brewing position</u> for placing the inlet probe into fluid communication with the brew chamber; and

    (e) at least one filter defined within the body, the at least one filter configured to retain the dry beverage medium within the brew chamber while allowing the brewed beverage to exit the brew chamber.

'855 patent, col. 15, ll. 19–48 (emphases added).

on that instruction, and the district court's denial of enhanced damages based on the jury verdict. Before trial, both parties proposed that the district court use the Federal Circuit Bar Association's ("FCBA") National Patent Jury Instructions ("NPJI") No. 4.1 for willful infringement. The district court initially agreed to use the FCBA instructions. Jury Instruction 40, in its original form, provided:

> Eko argues that ARM willfully infringed the Eko 855 patent. For purposes of this case only, you are to assume direct infringement of amended claim 8 of the Eko 855 patent. Therefore, you must go on and address the additional issue of whether or not this infringement was willful. Willfulness requires you to determine whether Eko proved that it is more likely than not that the infringement was <u>especially worthy of punishment</u>. You may not determine that the infringement was willful just because ARM knew of the Eko 855 patent and infringed it. Instead, <u>willful infringement is reserved for only the most egregious behavior</u>, such as where the infringement is malicious, deliberate, consciously wrongful, or done in bad faith.

> To determine whether ARM acted willfully, consider all facts. These may include, but are not limited, to:

> > (1) Whether or not ARM intentionally copied a product of Eko that is covered by the Eko 855 patent;

> > (2) Whether or not ARM reasonably believed it did not infringe or that the patent was invalid;

> > (3) Whether or not ARM made a good-faith effort to avoid infringing the Eko 855 patent, for example, whether ARM attempted to design around the 855 patent; and

(4) Whether or not ARM tried to cover up
its infringement.

*Eko Brands, LLC v. Adrian Rivera Maynez Enters., Inc.*,
No. 2:15-cv-00522-JPD (W.D. Wash. June 6, 2018), ECF
No. 233 at 23 (emphases added) ("Jury Instruction 40").

On the morning that the final jury instructions were to
be read to the jury, Eko objected to the language of the jury
instruction. Eko argued that the inclusion of the phrases
"especially worthy of punishment" and "willful infringe-
ment is reserved for only the most egregious behavior" in
Jury Instruction 40, "invite[d] the jury to make the legal
decision as to whether damages should be enhanced, or
whether it is an exceptional case, rather than limiting the
jury to the underlying factual question of whether the in-
fringement was willful," *Eko Brands, LLC v. Adrian Rivera
Maynez Enters.*, Inc., No. 2:15-cv-00522-JPD (W.D. Wash.
June 7, 2018), ECF No. 234 at 1. The district court consid-
ered Eko's proposed changes and revised the jury instruc-
tion to delete the phrase "only the most" from the
instruction. *Post-Trial Order* at 5. The jury was instructed
accordingly and returned a verdict of no willful infringe-
ment.

There is no claim that the FCBA model instructions are
afforded special status, nor could there be, since these in-
structions have not been endorsed or approved by this
court. Here, we agree with Eko that the jury instruction
contained language that in isolation was erroneous. As the
plain language of 35 U.S.C. § 284 makes clear, the issue of
punishment by enhancement is for the court and not the
jury. *Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 136 S. Ct. 1923,
1934 (2016) (holding that section 284 "'commits the deter-
mination' whether enhanced damages are appropriate 'to
the discretion of the district court'"). Under *Halo*, the con-
cept of "willfulness" requires a jury to find no more than
deliberate or intentional infringement. *Id.* at 1933 ("The
subjective willfulness of a patent infringer, intentional or

knowing, may warrant enhanced damages, without regard to whether his infringement was objectively reckless."); *SRI Int'l, Inc. v. Cisco Sys.*, 930 F.3d 1295, 1308 (Fed. Cir. 2019). The question of enhanced damages is addressed by the court once an affirmative finding of willfulness has been made. *See Halo*, 136 S. Ct. at 1933–34. It is at this second stage at which the considerations of egregious behavior and punishment are relevant. Questions of whether an accused patent infringer's conduct was "egregious behavior" or "worthy of punishment" are therefore not appropriate for jury consideration. As the district court noted, Eko timely raised this objection to the jury instruction under Rule 51, and the claimed error has been preserved on appeal. Fed. R. Civ. P. 51.

However, this is not the end of our consideration. In general, a party challenging jury instructions must "prove the jury instructions read in their entirety were incorrect or incomplete as given." *Verizon Servs. Corp. v. Vonage Holdings Corp.*, 503 F.3d 1295, 1307 n.7 (Fed. Cir. 2007) (quoting *Biodex Corp. v. Loredan Biomedical, Inc.*, 946 F.2d 850, 854 (Fed. Cir. 1991)). We apply Federal Circuit law to review "the legal sufficiency of jury instructions on an issue of patent law without deference to the district court."[4] *Synqor*, 709 F.3d at 1379 (quoting *DSU Med. Corp.*

---

[4]     This case is distinguishable from *Voda v. Cordis Corp.*, 536 F.3d 1311 (Fed. Cir. 2008). In *Voda*, this court reviewed a cross-appellant's challenge to jury instructions regarding willful infringement under the law of the regional circuit. *Id.* at 1328. But *Voda* did not involve a situation where this court was required to determine the legal sufficiency of a jury instruction. Instead, the parties in *Voda* agreed that the jury instruction on willfulness was erroneous under the correct standard at the time, and the only dispute was whether the erroneous jury instruction was harmless. *Id.* Therefore, the issue in this case—

*v. JMS Co., Ltd.*, 471 F.3d 1293, 1304 (Fed. Cir. 2006) (en banc in relevant part)).  The question here is whether Jury Instruction 40, in its entirety, correctly stated the law. *DSU*, 471 F.3d at 1304 (citing *Chiron Corp. v. Genentech, Inc.*, 363 F.3d 1247, 1258 (Fed. Cir. 2004)).

Although the inclusion of the phrases "especially worthy of punishment" and "reserved for egregious behavior" in Jury Instruction 40 was erroneous, we think that the instruction taken as a whole provides reasonable clarity as to the correct test for willful infringement.  First, although the instruction states that willful infringement is "reserved for egregious behavior," the same sentence also clarifies that willful infringement can simply be "deliberate" infringement.  Therefore, the jury was apprised that "deliberate" behavior can qualify as "egregious" behavior for the purposes of willful infringement.  Second, the latter half of Jury Instruction 40 provides a list of facts that the jury could properly consider, including "[w]hether or not ARM intentionally copied a product of Eko that is covered by the Eko 855 patent," and "whether or not ARM reasonably believed it did not infringe or that the patent was invalid."[5] *See Halo*, 136 S. Ct. at 1933 ("[C]ulpability is generally measured against the knowledge of the actor at the time of the challenged conduct."); *Omega Patents, LLC v. CalAmp Corp.*, 920 F.3d 1337, 1353 (Fed. Cir. 2019) ("As to willfulness, an accused infringer's reliance on an opinion of

---

whether the jury instructions correctly state an issue of patent law—was never addressed by the court in *Voda*.

[5]     There is no contention that the other two factors ("[w]hether or not ARM made a good-faith effort to avoid infringing the Eko 855 patent, for example, whether ARM attempted to design around the 855 patent" and "[w]hether or not ARM tried to cover up its infringement") are irrelevant to willfulness, and given the lack of objection we need not decide whether they are.

counsel regarding noninfringement or invalidity of the asserted patent remains relevant to the infringer's state of mind post-*Halo*."). This portion of the instruction again clarifies that the jury is to consider whether ARM's infringement of the '855 patent was intentional. In view of the entire jury instruction, the district court provided the jury an adequate test for willfulness. The jury was reasonably informed that it could make a finding of willful infringement if it found that ARM deliberately or intentionally infringed the '855 patent.

Also, it is significant that deletion of the only two phrases to which Eko objected would not have cured the problem that Eko identified, since Jury Instruction 40 would still have referred to "malicious," "consciously wrongful," and "bad faith" conduct. *Verizon*, 503 F.3d at 1305 ("A party seeking to alter a judgment based on erroneous jury instructions must establish that [the proposed instruction] would have remedied the error." (alteration in original) (quoting *Advanced Display Sys., Inc. v. Kent State Univ.*, 212 F.3d 1272, 1281 (Fed. Cir. 2000))). We conclude that the instruction as a whole was not legally erroneous given the limited nature of Eko's objection. We do not reach the question of harmless error.[6]

## AFFIRMED

Costs to neither party.

---

[6] We note that a legally erroneous jury instruction can only be harmless error if it "could not have changed the result." *Verizon*, 503 F.3d at 1307 n.7 (quoting *Ecolab, Inc. v. Paraclipse, Inc.*, 285 F.3d 1362, 1374 (Fed. Cir. 2002)).

# United States Court of Appeals
# for the Federal Circuit

---

**EKO BRANDS, LLC,**
*Plaintiff-Cross-Appellant*

**v.**

**ADRIAN RIVERA MAYNEZ ENTERPRISES, INC.,
ADRIAN RIVERA,**
*Defendants-Appellants*

---

2018-2215, 2018-2254

---

Appeals from the United States District Court for the Western District of Washington in No. 2:15-cv-00522-JPD, Magistrate Judge James P. Donohue.

---

REYNA, *Circuit Judge*, concurring-in-part, dissenting-in-part.

The district court erred in its construction of "passageway" by rewriting the claims, including adding a negative limitation that is unsupported by the specification. The district court further erred when it granted summary judgement of noninfringement and an award of attorney's fees based on its erroneous construction. I would vacate the district court's grant of summary judgement, reverse the award of attorney's fees, and remand for further proceedings.

The district court construed the term "passageway" as "a narrow space of some depth or length connecting one place to another." J.A. 12. This construction is not supported by the specification. The district court also interpreted "passageway" to exclude a receptacle "that utilized a broad, thin mesh." *Id.* This exclusion was raised *sua sponte* by the court and not argued by either party. As shown below, the district court relied on its construction of passageway to base, erroneously, its grant of summary judgment and attorney's fees.

To properly determine the meaning of a claim limitation, a court must consider the claim term in view of the specification. *Phillips v. AWH Corp.*, 415 F.3d 1303, 1315 (Fed. Cir. 2005) (en banc) (quoting *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 979 (1996)). A claim term carries its ordinary meaning "unless the patentee unequivocally imparted" a new or different meaning or "expressly relinquished claim scope during prosecution." *Omega Eng'g, Inc. v. Raytek Corp.*, 334 F.3d 1314, 1322-23 (Fed. Cir. 2003) (citing *Teleflex, Inc. v. Ficosa N. Am. Corp.*, 299 F.3d 1313, 1325–26, 63 USPQ2d 1374, 1380–81 (Fed. Cir. 2002)).

Here, the district court's construction of "passageway" to mean a "narrow space of some depth or length connecting one place to another" is not supported by the specification. Unlike other portions of its claim construction order where the district court refers to the claims, written description, figures, and prosecution history to support it construction (*see, e.g.*, J.A. 7-8, 9-11), the district court fails to identify any support for its construction of "passageway." Instead, the district court construed "passageway" "in light of the intrinsic evidence." J.A. 12. Neither the claims nor the written description, however, impose dimensional limitations (i.e., narrowness, length, or depth) on "passageway." While the specification describes a "passageway" on sixteen occasions, it only twice describes exemplary diameter and length parameters. '320 patent col. 4 ll. 37-39,

col. 5 ll. 28-30.   Those examples alone cannot limit the claimed invention as a whole.  *See, e.g.*, *ScriptPro LLC v. Innovation Assocs., Inc.*, 833 F.3d 1336, 1341 (Fed. Cir. 2016) ("[A] specification's focus on one particular embodiment or purpose cannot limit the described invention where that specification expressly contemplates other embodiments or purposes.").  On this basis alone, the district court's construction of "passageway" is erroneous.

The majority appears to recognize that the district court erred in its construction of "passageway," noting that:

> whether or not the first part of the district court's claim construction (requiring a "narrow space" . . .) was correct, we think the second part of the construction (that "passageway" does not "encompass a receptacle that [has] no bottom or utilized a broad-thin, mesh," *id.*) was correct, *and that the district court properly granted summary judgment based on its construction*.

Maj. Op. 10 (emphasis added).  This is incorrect.  The district court also erred by interpreting "passageway" to exclude a receptacle "that utilized a broad, thin mesh."  This aspect of the district court's construction constitutes a negative claim limitation that is unsupported by the specification.

Negative limitations added during claim construction must find support either in the specification or the prosecution history.  *Omega Eng'g, Inc.*, 334 F.3d at 1322-23.  A specification adequately supports the addition of a negative limitation where the limitation is expressly disclaimed or where "independent lexicography in the written description" justifies adding it.  *Id.*  In *Omega Eng'g, Inc.*, the district court construed "periphery" to mean "projection of the laser light toward the surface," but the court added that periphery "does not encompass light striking the center or interior portion of the energy zone."  *Id.* at 1321.  On appeal, we rejected that negative limitation, reasoning that

there was no "express disclaimer or independent lexicography in the written description that would justify adding [it]." *Id.* at 1322-23. We concluded that the negative limitation was not inherent to the claim term by relying on its dictionary definition. *Id.* at 1322. We also concluded that the negative limitation had no support in the prosecution history. *Id.*; *see also id.* at 1327. In *Linear Tech. Corp. v. Int'l Trade Comm'n*, we similarly reversed a claim construction that incorporated an unsupported negative limitation. 566 F.3d 1049, 1059-60 (Fed. Cir. 2009). The Administrative Judge ("AJ") construed the phrase "monitoring the current" to exclude "monitoring voltage." *See id.* at 1059. We found that the AJ erred by adding the negative limitation because the specification provided no support for it. *Id.* at 1060 (citing *Omega Eng'g, Inc.*, 334 F.3d at 1323).

Here, the district court's exclusion of "a broad, thin mesh" from the meaning of "passageway" writes into the claim an unsupported negative limitation. Neither the claims nor the written description of the '320 patent mention a mesh, let alone a broad, thin mesh, and there is no express disclaimer supporting the negative limitation. There also is no independent lexicography in the written description upholding the negative limitation. The '320 patent includes no definition of "passageway." And the dictionary definition of "passage"—"a way of exit or entrance: a road, path, channel, or course by which something passes"[1]—does not inherently require the exclusion of a broad, thin mesh. Nor is there any record evidence to suggest that the prosecution history supports the exclusion. The *only* record evidence, or mention of "broad, thin mesh" is in relation to Eko Brands' accused product. There is no basis, therefore, for the district court to have redirected the

---

[1]     *See* Merriam-Webster's Collegiate Dictionary (11th ed. 2003) (defining "passageway" as "a way that allows passage").

scope of the claim to exclude broad, thin mesh other than to exclude the accused products.  *See Cohesive Techs., Inc. v. Waters Corp.*, 543 F.3d 1351, 1367 (Fed. Cir. 2008) ("[I]t is not appropriate for the court to construe a claim solely to exclude the accused device").  The district court therefore erred by rewriting the claimed "passageway" to exclude a broad, thin mesh.

Because the district court relied on its erroneous construction of "passageway" as its basis for granting summary judgment and in awarding attorney's fees, I dissent. I concur in all remaining aspects of the majority's opinion.