NOTE:  This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**SYNQOR, INC.,**
*Plaintiff-Appellee*

**v.**

**VICOR CORPORATION,**
*Defendant-Appellant*

---

2024-1879

---

Appeal from the United States District Court for the Eastern District of Texas in No. 2:14-cv-00287-RWS-JBB, Judge Robert Schroeder, III.

---

Decided:  February 13, 2026

---

STEVEN J. HOROWITZ, Sidley Austin LLP, Chicago, IL, argued for plaintiff-appellee.  Also represented by STEPHANIE P. KOH, EMMA GRACE SILBERSTEIN; MICHAEL D. HATCHER, Dallas, TX; JILLIAN STONECIPHER, Washington, DC.

JOHN BASH, Quinn Emanuel Urquhart & Sullivan, LLP, Austin, TX, argued for defendant-appellant.  Also represented by NICHOLAS JOHN CALUDA, Houston, TX; SEAN S.

PAK, San Francisco, CA; PATRICK T. SCHMIDT, Los Angeles, CA.

————————————

Before REYNA and CHEN, *Circuit Judges*, and FREEMAN, *District Judge*.[1]

FREEMAN, *District Judge*.

SynQor, Inc. ("SynQor") filed suit against Vicor Corp. ("Vicor") for infringement of several patents, including U.S. Patent No. 7,564,702 ("'702 patent"), in the United States District Court for the Eastern District of Texas. A jury found that Vicor indirectly and willfully infringed two claims of the '702 patent by selling its direct-current–direct current ("DC-DC") converters to customers and awarded $6.5 million in damages.

The district court denied Vicor's post-trial motion for judgment as a matter of law ("JMOL") of noninfringement, holding that the jury's verdict was supported by substantial evidence. The district court also granted SynQor's post-trial motions for enhanced damages and attorneys' fees, increasing SynQor's award to $25 million. We affirm the district court's judgment, finding that the jury's infringement verdict and willfulness finding were supported by substantial evidence and that the district court's orders awarding enhanced damages and attorneys' fees were not an abuse of discretion.

BACKGROUND

I

The technology at issue in this appeal involves DC-DC converters, which are computer components configured to

————————————

[1]    Honorable Beth Labson Freeman, District Judge, United States District Court for the Northern District of California, sitting by designation.

receive a direct current at a given voltage and convert it to a lower voltage output. '702 patent col. 1, ll. 23–25. Many DC-DC converters use metal-oxide-semiconductor field-effect transistors ("MOSFETs"), including "synchronous" or "controlled" rectifiers, to turn the flow of current across the device "on" or "off" to avoid core saturation. *See* '702 patent col. 5 ll. 14–36, col. 6 ll. 21–28, 41–48. The conduction state ("on" or "off") depends on whether the voltage applied at the gate exceeds a specified threshold value: The transistor will turn "on" when the voltage applied at the gate exceeds the threshold. *See* '702 patent col. 16 ll. 10–17.

Two important functions of DC-DC converters include (1) isolation, whereby the device insulates direct current by not directly connecting the input and output to avoid shocking the user, and (2) regulation, which enables the converter to produce the specific output voltage required. The '702 patent is entitled "High Efficiency Power Converter" and is directed to DC-DC converters with an "intermediate bus architecture," where the direct current input is first isolated and then flows into one of several regulators depending on the desired output. *See, e.g.,* '702 patent fig. 5.

The '702 patent's claims are directed to a DC-DC converter in which the isolating MOSFETs are "cross-coupled" to opposite transformers, leading to a highly dissipative overlap interval. '702 patent col. 6 ll. 41–48, col. 7 ll. 37–42. To improve efficiency, the '702 patent's specification teaches that it is "desirable to keep the overlap interval short compared to the period of the cycle." '702 patent col. 7 ll. 42–44. The claims at issue in this appeal (independent claim 55 and dependent claim 67) require that the transistors be "turned on for an on-state time and off for an off-state time in synchronization with a voltage waveform" ("In-Synch Limitation"), '702 patent col. 22 ll. 42–44, with "transition times which are short relative to the on-state and the off-state times" ("Short Transitions Limitation"), '702 patent col. 22 ll. 48–50.

## II

Prior to filing this suit, SynQor sued several other DC-DC power converter companies for patent infringement (the "Artesyn Suit"). *SynQor, Inc. v. Artesyn Techs., Inc.*, No. 07-cv-00497-RWS (E.D. Tex. filed Nov. 13, 2007). This Court ultimately affirmed the jury's verdict that the Artesyn Suit defendants induced infringement of SynQor's asserted patents (including the '702 patent) by selling components to customers that incorporated those products into systems with intermediate bus architecture. *See SynQor, Inc. v. Artesyn Techs., Inc.*, 709 F.3d 1365, 1372–73, 1379 (Fed. Cir. 2013).

As relevant to this appeal, the Artesyn Suit defendants asserted that damages for lost profits should not be awarded because Vicor's unregulated bus converters (i.e., the accused products here) were an available noninfringing alternative. In connection with the damages phase, Vicor's Chief Executive Officer Dr. Patrizio Vinciarelli was deposed. J.A. 52257 ¶ 19. At the Artesyn trial, SynQor presented expert testimony that Vicor's unregulated bus converters were not a noninfringing alternative because they also infringed the asserted patents. The jury in the Artesyn Suit ultimately awarded lost-profits damages. *See SynQor, Inc. v. Artesyn Techs., Inc.*, No. 07-cv-00497-TJW-CE, 2011 WL 238645, at *8 (E.D. Tex. Jan. 24, 2011). The district court in that case also issued an injunction against the sale of the accused products. *See id.* at *9.

Around the conclusion of proceedings in the Artesyn Suit, certain defendants and other customers approached Vicor with requests to supply them with noninfringing converters. Vicor responded by designing its own unregulated bus converters as replacements for the enjoined products for use in intermediate bus architecture power supply systems. J.A. 52257 ¶ 22. Notably, Cisco Systems, Inc. ("Cisco") asked Vicor to provide "sufficient legal evidence/proof that Vicor is not impacted" by the disposition

of the Artesyn Suit. J.A. 76858. Vicor responded that its products were "fundamentally different in most obvious respects" from the products at issue in the Artesyn Suit (and found to infringe SynQor's patents). Instead of providing an opinion of counsel, Vicor agreed to indemnify Cisco. J.A. 85713 (ll. 1–3), 85737 (ll. 1–5). Vicor also designed some converters with transition times above 25%, since the district court in the Artesyn Suit construed the Short Transitions Limitation as requiring transition times less than 20%.

### III

Vicor filed a complaint for declaratory judgment of non-infringement and invalidity in the United States District Court for the District of Massachusetts on January 26, 2011. *See Vicor Corp. v. SynQor, Inc.*, No. 11-cv-10146 (D. Mass. filed Jan. 26, 2011). Shortly thereafter, SynQor filed the complaint giving rise to this appeal in the United States District Court for the Eastern District of Texas against Vicor,[2] asserting infringement of the same patents as the Artesyn Suit, including the '702 patent and U.S. Patent Nos. 7,072,190 ("'190 patent"), 7,272,021 ("'021 patent"), and 8,023,290 ("'290 patent").[3] *See SynQor Inc.*

---

[2] SynQor's original complaint in the underlying action named Cisco, Vicor, and Ericsson, Inc. ("Ericsson") as defendants. SynQor later voluntarily dismissed Ericsson, and the claims against Cisco and Vicor were severed.

[3] Vicor sought *inter partes* reexamination of SynQor's patents and obtained a stay of litigation in 2016. The reexaminations resulted in the cancellation of all claims of the '021 and '290 patents, *see Vicor Corp. v. SynQor, Inc.*, 869 F.3d 1309, 1324–25 (Fed. Cir. 2017); *SynQor, Inc. v. Vicor Corp.*, No. 21-2211, 2023 WL 234186, at *1 (Fed. Cir. Jan. 18, 2023), as well as claims of the '190 patent lacking the Short Transitions Limitation, *see Vicor Corp. v. SynQor, Inc.*, 603 F. App'x 969, 975

*v. Ericsson, Inc.*, No. 11-cv-00054-TJW-CE (E.D. Tex. filed Jan. 28, 2011). In its answer, Vicor asserted affirmative equitable defenses of waiver and estoppel as well as counterclaims for unfair competition and tortious interference under Massachusetts law. *See* J.A. 63757, 63783–89.

In the course of the litigation, the district court construed the In-Synch Limitation as requiring that each transistor be "turned from on to off and from off to on at some point in the course of the change of the voltage waveform." J.A. 620. Despite the court's construction, additional disputes arose throughout the litigation, with SynQor seeking to argue that "being turned from on to off and from off to on" is an action that may take place over a period of time and Vicor responding that the claims require that the transistors actually switch states during the transition. The district court eventually ordered supplemental briefing regarding the claim-construction dispute and ultimately concluded that "[t]he claim is broad enough to allow turn on and off to be shown by either a process or an instant," and that "Vicor may not argue to the jury that the claimed turn on or off must be identified by a specific instant in time, and SynQor may not argue to the jury that the claimed turn on or off must be identified by a process." J.A. 47359.

SynQor proceeded to trial on claim 2 of the '190 patent and claims 55 and 67 of the '702 patent, arguing that Vicor indirectly infringed the patents under the doctrine of willful blindness. J.A. 84575–77. For the accused products that did not literally meet the Short Transition Time Limitation, SynQor argued infringement under a doctrine-of-equivalents theory. At the close of evidence, the district

---

(Fed. Cir. 2015). This Court affirmed the Board's conclusion that the '702 patent's claims were not shown to be unpatentable, *see Vicor Corp. v. SynQor, Inc.*, 706 F. App'x 673, 677–78 (Fed. Cir. 2017).

court deferred ruling on Vicor's motion for JMOL of noninfringement and granted SynQor's motion for JMOL as to Vicor's state-law counterclaims. J.A. 49512 ¶¶ 9–10. The jury found that Vicor did not infringe claim 2 of the '190 patent but indirectly and willfully infringed claims 55 and 67 of the '702 patent, awarding $6.5 million in damages. *See* J.A. 49498–502.

## IV

After trial, Vicor renewed its JMOL motion for noninfringement of the '702 patent. J.A. 51237. Vicor argued that no reasonable jury could find that it indirectly infringed the '702 patent's claims, urging that there was not sufficient evidence to show that (1) Vicor subjectively believed that there was a high probability of infringement or that (2) Vicor took affirmative, deliberate actions to avoid confirming that belief. Vicor further argued that, even if the evidence supported the jury's verdict of indirect infringement, it did not support the jury's verdict of willful infringement, which imposes a different scienter standard than indirect infringement.

 The district court denied Vicor's JMOL motion, stating that "[b]oth parties presented substantial evidence as to whether Vicor indirectly infringed the '702 patent." J.A. 31. The district court reasoned that a reasonable jury could have found indirect infringement based on the "totality of circumstances," namely, "Vicor's work on drop-in replacements, Vicor's knowledge of the relatively recently issued '702 patent, Vicor's knowledge of and participation in the [Artesyn Suit], Vicor's failure to obtain opinion of counsel, and Vicor's failure to read the '702 patent until it filed its declaratory action." J.A. 31 (footnote omitted). The district court concluded that "a reasonable jury could consider this same evidence to find that Vicor's indirect infringement was willful." J.A. 31.

SynQor filed motions for attorneys' fees, *see* J.A. 49541, and for enhanced damages, *see* J.A. 51091. As to attorneys'

fees, SynQor argued that the case before the district court was exceptional because Vicor's infringement merits defenses, infringement equitable defenses, and counterclaims were exceptionally weak. SynQor further argued that Vicor litigated the case in an exceptional manner by filing a series of *ex parte* reexamination petitions after its *inter partes* review petition had been denied and using its counterclaims to introduce inflammatory and prejudicial allegations (including SynQor's so-called "Kill Vicor" campaign). J.A. 49556–57. As to enhanced damages, SynQor argued that the case was exceptional because Vicor had no good-faith belief of noninfringement or invalidity and litigated the case in bad faith. The district court granted both motions. J.A. 71, 92.

As to attorneys' fees, the district court agreed with SynQor that Vicor's litigation positions—particularly its equitable defenses and counterclaims, were exceptionally weak—concluding that "Vicor unnecessarily multiplied these proceedings by its continued adoption of unreasonable and untenable positions." J.A. 78. The district court also faulted Vicor for repeatedly attempting to relitigate the In-Synch Limitation to argue to the jury that the limitation could only be satisfied if the transistors turned "on" or "off" at a discrete moment in time, finding that "[t]his behavior is especially egregious with respect to the accused products with transition times of less than 20 percent, where Vicor's only true defense to induced infringement was an alleged lack of intent or knowledge." J.A. 78. After the district court awarded attorneys' fees, the parties stipulated to an amount of $9.5 million, with Vicor reserving its right to appeal. J.A. 52314–18.

As to enhanced damages, the district court "ultimately . . . focused on 'egregious' behavior concerning the '702 [p]atent" but also performed its analysis based on the factors we set forth in *Read Corporation v. Portec Inc.*, 970 F.2d 816 (Fed. Cir. 1992), based on the parties' arguments. J.A. 83. The district court determined that the

*Read* factors favored enhancing damages because Vicor acted in bad faith, concluding that "[u]ltimately, although . . . Vicor's conduct does not merit a full trebling of damages, . . . enhancement is appropriate." J.A. 89. The court enhanced damages by $4.5 million. J.A. 92.

Vicor filed this timely appeal. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(1).

## DISCUSSION

## I

We begin with Vicor's arguments as to infringement. Vicor urges that there was insufficient evidence before the jury for it to find either that Vicor induced infringement of the '702 patent or that such infringement was willful. In reviewing issues tried to a jury, we review the district court's denial of post-trial JMOL motions and new trial motions under the law of the regional circuit. *Packet Intel. LLC v. NetScout Sys., Inc.*, 965 F.3d 1299, 1305 (Fed. Cir. 2020). The Fifth Circuit reviews the denial of a JMOL motion de novo under the same standard as the trial court, i.e., substantial evidence. *Bellows v. Amoco Oil Co.*, 118 F.3d 268, 273 (5th Cir. 1997).

As to indirect infringement, Vicor's arguments amount to no more than an invitation for us to reweigh the evidence before the jury and make various inferences in Vicor's favor. This we decline to do. As to willful infringement, the district court correctly found that the jury's verdict was supported by substantial evidence. While we agree with Vicor that the standards for willful infringement and willful blindness are different, we hold that the evidence in the record, taken in the light most favorable to the jury's verdict, was sufficient to prove both indirect infringement and willfulness.

A

Section 271 of the Patent Act creates liability for both direct and indirect infringement, providing that "[w]hoever actively induces infringement of a patent shall be liable as an infringer." 35 U.S.C. § 271(b). Active inducement "requires knowledge of the underlying direct infringement—not merely the knowledge of the existence of the patent." *Unwired Planet, LLC v. Apple Inc.*, 829 F.3d 1353, 1364 (Fed. Cir. 2016). Knowledge is a high standard—this Court has repeatedly explained that it requires more than proof of mere negligence or recklessness. *See, e.g.*, *Roche Diagnostics Corp. v. Meso Scale Diagnostics, LLC*, 30 F.4th 1109, 1118 (Fed. Cir. 2022).

The Supreme Court has explained that section 271(b)'s knowledge requirement can be satisfied by showing that the defendant possessed actual knowledge of the underlying infringement or, in certain cases, under the doctrine of willful blindness. *Global-Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754, 766 (2011). To establish willful-blindness liability, a patentee must show that the defendant (1) "subjectively believe[d] that there [was] a high probability" of infringement and (2) took "deliberate actions to avoid learning of that fact." *Id.* at 769.

Here, Vicor argues that the district court erred by denying JMOL of noninfringement because the evidence before the jury was insufficient to establish either element of willful blindness. Appellant's Br. 32. We address each element in turn, concluding that the evidence was sufficient for a reasonable jury to find both requirements were met by Vicor's conduct.

As to belief of likelihood of infringement, Vicor argues that there was no evidence that it subjectively believed it was infringing the '702 patent during the relevant period, urging that its "good-faith belief that it did not infringe . . . negate[d] the requisite knowledge of infringement." Appellant's Br. 40. Emphasizing the highly fact-intensive

nature of the issue of intent, SynQor responds that, draw-ing all inferences in its favor, the evidence in the record was sufficient for a jury to find that Vicor subjectively be-lieved there was a high likelihood of infringement. Appel-lee's Br. 34. We agree.[4]

The problem with Vicor's argument at bottom is that it relies on drawing inferences from the evidence that the jury was simply not required to make. *See Warsaw Ortho-pedic, Inc. v. NuVasive, Inc.*, 824 F.3d 1344, 1348 (Fed. Cir. 2016) (sustaining indirect infringement verdict where there was "substantial evidence that [the defendant's] in-fringement position was objectively unreasonable" and jury "could reasonably have concluded" that defendant "had knowledge" or "was willfully blind" to the fact of infringe-ment). The jury heard extensive evidence that Vicor mon-itored and reverse engineered SynQor's patent-marked products, *see* J.A. 85108 (ll. 15–25), 85109 (ll. 12–20), 85433 (ll. 13–17); was made aware of SynQor's position that Vicor's products were not a noninfringing alternative, *see* J.A. 78118, 84755 (ll. 13–22), 84756 (ll. 1–4); and chose to indemnify Cisco rather than provide a legal opinion that its products did not infringe, *see* J.A. 85736–37. On this record, the "requisite intent to induce infringement may be inferred from all the circumstances." *Broadcom Corp.*

---

[4]    SynQor argues that the evidence before the jury was sufficient to support a reasonable inference that Vicor not only was willfully blind but also possessed actual knowledge of infringement. *See* Appellee's Br. 34–35. Be-cause we agree with SynQor that a reasonable jury could infer based on the evidence in the record that Vicor subjec-tively believed there was a high chance of infringement and deliberately avoided confirming this belief, we need not de-cide whether the evidence was sufficient to prove actual knowledge.

*v. Qualcomm Inc.*, 543 F.3d 683, 699 (Fed. Cir. 2008) (quoting *Water Techs. Corp. v. Calco, Ltd.*, 850 F.2d 660, 669 (Fed. Cir. 1988)).

Moreover, the jury was entitled to rely on evidence that Vicor sought to capitalize on the "window of opportunity," J.A. 78136, 85126 (ll. 8–21), that opened once the court in the Artesyn Suit enjoined the sale of competitors' converters. To the extent that Vicor argues that the jury could not find that Vicor was on notice of SynQor's position until it was brought into the Artesyn Suit, *see* Appellant's Br. 42, we disagree. Given the evidence that Vicor and SynQor competed in the same market and monitored one another, the jury was not required to suspend disbelief and credit Vicor's account that it was unaware of the Artesyn Suit until Dr. Vinciarelli was deposed during the damages phase.

As to the deliberate-action requirement, Vicor urges that the evidence "focus[ed] on *failures to act* to learn of infringement, whereas *Global-Tech* requires *deliberately acting* to shield oneself from learning of infringement." Appellant's Br. 33 (emphasis added). This argument is ultimately semantic. True, willful blindness requires proof of deliberate acts to avoid confirming one's subjective belief of a high probability of infringement, but the inquiry is not as rigid as Vicor's argument would appear to suggest.

The jury heard from Dr. Vinciarelli himself that he did not read SynQor's patents, despite his admission that, as the owner of many patents, he understood that one needed to compare products to assess infringement. J.A. 85729–31, 85751. Such evidence supports the deliberate-action requirement. See *Info-Hold, Inc. v. Muzak LLC*, 783 F.3d 1365, 1373 (Fed. Cir. 2015); *see also Smith & Nephew, Inc. v. Arthrex, Inc.*, 502 F. App'x 945, 950 (Fed. Cir. 2013) (nonprecedential) (explaining that testimony that a defendant "made no attempt to compare its [products] to the claims of the [asserted] patent" supported jury's indirect-infringement verdict). Even if a reasonable jury *could* have

interpreted Dr. Vinciarelli's apparent confidence in Vicor's technology as being the sole explanation for why Vicor did not seek to confirm whether its products infringed after offering drop-in replacements in the wake of the Artesyn Suit, the jury was not *required* to do so, especially after hearing of Vicor's choice to provide indemnification instead of a formal opinion-of-counsel letter in response to Cisco's request for legal assurances of noninfringement. *See Comark Commc'ns, Inc. v. Harris Corp.*, 156 F.3d 1182, 1192 (Fed. Cir. 1998) (explaining that court are "not required to assume that the jury believed all or indeed any . . . exculpatory evidence" in deciding JMOL motions).

Vicor's position is particularly difficult to square with the jury having heard of Vicor's extensive monitoring and familiarity with SynQor's products, along with Vicor's market expansion, which may permissibly support a finding of willful blindness. *Global-Tech*, 563 U.S. at 770–71 (noting that the defendant performed "market research" and "gather[ed] information as much as possible" (alteration in original) (internal quotation marks and citation omitted)). We accordingly affirm the district court's denial of JMOL of noninfringement as to indirect infringement of the '702 patent.

B

Section 284 of the Patent Act allows for enhancement of damages in cases of willful infringement. 35 U.S.C. § 284. "The subjective willfulness of a patent infringer, intentional or knowing, may warrant enhanced damages, without regard to whether his infringement was objectively reckless." *Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 579 U.S. 93, 105 (2016). We have explained that knowledge of the asserted patent and evidence of infringement is necessary, but not sufficient, for a finding of willfulness: "Rather, willfulness requires deliberate or intentional infringement." *Bayer Healthcare LLC v. Baxalta Inc.*, 989 F.3d 964, 988 (Fed. Cir. 2021); *see also Provisur Techs., Inc. v. Weber,*

*Inc.*, 119 F.4th 948, 956 (Fed. Cir. 2024), *cert. denied*, 145 S. Ct. 1181 (2025).

Willfulness is ultimately a question for the factfinder, taking into consideration the totality of circumstances. *Exmark Mfg. Co. v. Briggs & Stratton Power Prods. Grp., LLC*, 879 F.3d 1332, 1352–53 (Fed. Cir. 2018). "[T]he concept of 'willfulness' requires a jury to find no more than deliberate or intentional infringement." *Eko Brands, LLC v. Adrian Rivera Maynez Enters., Inc.*, 946 F.3d 1367, 1378 (Fed. Cir. 2020) (citing *Halo*, 579 U.S. at 105). We do not "second-guess the jury or substitute [our] judgment for its judgment" when reviewing a finding of willfulness. *Arctic Cat Inc. v. Bombardier Recreational Prods. Inc.*, 876 F.3d 1350, 1371 (Fed. Cir. 2017).

Vicor's primary argument on appeal is that the district court erred as a matter of law in denying Vicor's motion for JMOL as to willfulness because it "relied exclusively on the same willful-blindness theory" as proffered for indirect infringement. Appellant's Br. 46–47. SynQor responds that it recognizes that the standards are different but that there is nothing problematic about the "evidence supporting the jury's finding of indirect infringement . . . likewise support[ing] its finding of willful infringement." Appellee's Br. 50.

As a threshold matter, we agree with Vicor that the standards for indirect infringement under the willful blindness doctrine and willful infringement are distinct. The inquiry for willful blindness is to determine whether the defendant took deliberate steps to avoid confirming infringement despite its subjective belief of a high likelihood of infringement. *Global-Tech*, 563 U.S. at 769. The touchstone of willful infringement, on the other hand, is whether infringement was "deliberate" or "intentional." *Eko Brands*, 946 F.3d at 1378.

We have previously explained that "a finding of induced infringement does not compel a finding of

willfulness," and "the standard required for willful infringement is different than that required for induced infringement." *SRI Int'l, Inc. v. Cisco Sys., Inc.*, 14 F.4th 1323, 1329 (Fed. Cir. 2021). That does not mean, however, that the two inquiries are completely unrelated—we have also acknowledged that "[i]n some respects, the intent standard for inducement is akin to the one for willfulness, as both rest on the subjective intent of the accused infringer." *Roche Diagnostics*, 30 F.4th at 1119. Here, a reasonable jury could have concluded that the same evidence supporting indirect infringement independently met the different threshold required for willful infringement.

Vicor dedicates much of its argument to urging that the district court improperly conflated the legal standards for indirect infringement and willfulness. But our task on appeal is to review the jury's verdict, not the district court's order. *Bellows*, 118 F.3d at 273; *see also Braun Inc. v. Dynamics Corp. of Am.*, 975 F.2d 815, 822 (Fed. Cir. 1992). As Vicor itself concedes, *see* Appellant's Br. 48, the jury was properly instructed that it could only find willful infringement if SynQor demonstrated by a preponderance of evidence "that Vicor knew of the SynQor patent and that the infringement by Vicor was intentional," and that it was not enough that "Vicor was aware of the patent and infringed it," J.A. 49466–67. We accordingly must affirm if a reasonable jury could have found that the evidence was sufficient to prove willfulness under this concededly proper instruction. *Warsaw Orthopedic*, 824 F.3d at 1348.

While it is true that willful infringement requires a different intent than willful blindness, evidence of indirect infringement may be probative of willfulness, especially when combined with a lack of reasonable noninfringement and invalidity positions. In *SRI International*, for example, we affirmed a jury's finding of willfulness because the jury's "findings on induced infringement, when combined with [the defendant's] lack of reasonable bases for its infringement and invalidity defenses, provide[d] sufficient

support for the jury's finding of willful infringement."
14 F.4th at 1329. The jury was free to credit the relevant
evidence of record, which included evidence suggesting
that Vicor deliberately infringed the patent without a rea-
sonable belief of invalidity or noninfringement as to at least
certain accused products.

In view of the unchallenged jury instructions and the
evidence in the record, we conclude that the district court
did not err in denying Vicor's motion to set aside the jury's
willfulness finding. As discussed above, the jury heard
that Vicor monitored and reverse engineered SynQor's
products, knew of SynQor's patents, seized the opportunity
to offer drop-in replacements for Artesyn Suit defendants,
and sold at least some converters with transition times less
than 20%. Vicor did not provide competing expert testi-
mony on literal infringement for many of the converters at
issue and did not present an invalidity defense for the
'702 patent at all. Based on the totality of the circum-
stances, a reasonable jury could have determined that Vi-
cor willfully infringed the '702 patent.

## II

Having concluded that the jury's infringement verdict
and willfulness finding were supported by substantial evi-
dence, we next turn to the district court's awards of attor-
neys' fees and enhanced damages. We review such
determinations for abuse of discretion. *WBIP, LLC
v. Kohler Co.*, 829 F.3d 1317, 1339–40 (Fed. Cir. 2016). We
hold that the district court acted within its discretion in
awarding attorneys' fees and enhanced damages to
SynQor.

## A

District courts "in exceptional cases may award reason-
able attorney fees to the prevailing party." 35 U.S.C. § 285.
"The statute imposes 'one and only one constraint on dis-
trict courts' discretion to award attorney's fees in patent

litigation:  [t]he power is reserved for "exceptional" cases.'" *Lumen View Tech. LLC v. Findthebest.com, Inc.*, 811 F.3d 479, 482 (Fed. Cir. 2016) (alteration in original) (quoting *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 553 (2014)).  "[A]n 'exceptional' case is simply one that stands out from others with respect to the substantive strength of a party's litigating position . . . or the unreasonable manner in which the case was litigated." *Octane Fitness*, 572 U.S. at 554.  "District courts may determine whether a case is 'exceptional' in the case-by-case exercise of their discretion, considering the totality of the circumstances." *Id.*

In a reasoned order discussing SynQor's motions for attorneys' fees and enhanced damages, the district court concluded that attorneys' fees were warranted because SynQor was a prevailing party and the case was exceptional.  J.A. 71.  In accepting SynQor's argument that "Vicor's litigating position was exceptionally weak and Vicor's litigation tactics were in bad faith," J.A. 76, the district court pointed to Vicor's relitigation of its claim construction, weak equitable claims, and gamesmanship at trial to support its exceptional-case finding.  *See, e.g.*, J.A. 78 ("Vicor unnecessarily multiplied these proceedings by its continued adoption of unreasonable and untenable positions . . . .  Vicor's insistence that [its equitable] defenses be presented to the jury[] [and] last-minute decision to rescind its request for an advisory verdict[] demonstrate not only the weakness of these defenses but an exceptional degree of gamesmanship.").

Vicor argues three separate errors in the district court's exceptional-case finding and award of attorneys' fees.  Specifically, Vicor argues that the case was not exceptional and that the district court "(1) failed to consider all relevant circumstances, (2) improperly punished Vicor for pursuing colorable state-law counterclaims and equitable defenses that survived summary judgment, and (3) wrongly condemned Vicor for rearguing a rejected

claim-construction position." Appellant's Br. 50. SynQor responds that the district court was well within its discretion to find that Vicor had engaged in litigation misconduct warranting an award of attorneys' fees.

A district court abuses its discretion when it "base[s] its ruling on an erroneous view of the law or on a clearly erroneous assessment of the evidence." *Rothschild Connected Devices Innovations, LLC v. Guardian Prot. Servs., Inc.*, 858 F.3d 1383, 1387 (Fed. Cir. 2017) (alteration in original) (quoting *Highmark Inc. v. Allcare Health Mgmt. Sys., Inc.*, 572 U.S. 559, 563 n.2 (2014)). None of Vicor's arguments on appeal suggests such errors on the part of the district court.

As to the totality of circumstances, Vicor apparently complains that the district court erred in failing to credit instances of its good behavior, charging that "the district court failed to account for the fact that over a decade of litigation, there was no allegation that Vicor committed discovery misconduct, violated any court order, or transgressed any evidentiary ruling at trial." Appellant's Br. 50. We are aware of no rule or prior case holding that exceptional cases are limited to examples of attorney misconduct. *Cf. Energy Heating, LLC v. Heat On-The-Fly, LLC*, 15 F.4th 1378, 1383 (Fed. Cir. 2021) (explaining that district courts are "not required to affirmatively weigh [a party's] purported lack of litigation misconduct" (internal quotation marks and citation omitted)).

As to the district court's discussion of Vicor's equitable claims and claim construction position, we are mindful that the district court "live[d] with the case over a prolonged period of time" and is thus "'better positioned'" to determine whether it was exceptional. *Highmark*, 572 U.S. at 563–64 (quoting *Pierce v. Underwood*, 487 U.S. 552, 560 (1988)). To the extent that Vicor suggests that its equitable claims could not support an exceptional-case finding because they survived summary judgment, it is mistaken. The fact that

the district court found that genuine factual disputes precluded summary judgment prior to trial does not mean that such factual disputes were actually borne out in the evidence or that Vicor's positions were not weak. *See Eko Brands*, 946 F.3d at 1375. Moreover, Vicor's mere disagreement with the district court's considered view of its litigation conduct is not sufficient to support an abuse of discretion.

B

District courts have discretion to "increase the damages up to three times the amount found or assessed." 35 U.S.C. § 284. We have explained that, among the relevant factors in determining whether to enhance damages, district courts may consider (1) whether the defendant deliberately copied the ideas or design of another, (2) whether the defendant investigated the scope of the patent and formed a good-faith belief that it was invalid or that it was not infringed, (3) the defendant's behavior in the litigation, (4) the defendant's size and financial condition, (5) the closeness of the case, (6) the duration of defendant's misconduct, (7) the defendant's remedial action, (8) the defendant's motivation for harm, and (9) whether the defendant attempted to conceal its misconduct. *Read*, 970 F.2d at 827. A district court is not required, however, to discuss the *Read* factors, which are nonexhaustive: "The *Halo* test merely requires the district court to consider the particular circumstances of the case to determine whether it is egregious." *Presidio Components, Inc. v. Am. Tech. Ceramics Corp.*, 875 F.3d 1369, 1383 (Fed. Cir. 2017).

Vicor argues that the district court committed legal error by punishing Vicor for litigation misconduct rather than "egregious infringement behavior." Appellant's Br. 57–59 (quoting *Halo Elecs.*, 579 U.S. at 103). While we agree with Vicor that "[a]cts of litigation misconduct standing alone 'are not sufficient for an increased damages award,'" *Sunoco Partners Mktg. & Terminals L.P. v. U.S.*

*Venture, Inc.*, 32 F.4th 1161, 1179 (Fed. Cir. 2022) (quoting *Jurgens v. CBK, Ltd.*, 80 F.3d 1566, 1570 (Fed. Cir. 1996)), that is not what happened here.

The district court walked through the *Read* factors and awarded enhanced damages well within the statutory treble damages permitted by statute.  J.A. 89 ("Ultimately, although the Court finds that Vicor's conduct does not merit a full trebling of damages, . . . . [h]aving reviewed the *Read* factors and having considered the totality of the circumstances in this case, . . . the Court finds an enhancement [of $4.5 million] is appropriate.").  While Vicor makes much of the district court's references to its litigation misconduct, this was not the only basis for its decision.  For example, the district court found that Vicor's infringement was longstanding and that, for certain accused products, Vicor lacked a good-faith belief of non-infringement and failed to take appropriate remedial action.  *See* J.A. 84–89.

Moreover, we note that the jury reviewed the evidence in the record and found willfulness.  While "an award of enhanced damages does not necessarily flow from a willfulness finding," we have recognized that such a finding "is a component of enhancement."  *SRI Int'l*, 14 F.4th at 1330 (quoting *Presidio Components*, 875 F.3d at 1382).  Under these circumstances, we cannot say that the district court abused its discretion in enhancing damages.

## CONCLUSION

We have considered Vicor's remaining arguments and find them unpersuasive.  For the foregoing reasons, we affirm the jury's verdict of indirect and willful infringement of the '702 patent and the district court's enhanced damages and attorneys' fees orders.

## **AFFIRMED**